HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UTICA LEASECO, LLC, a Florida limited liability company,<br><br>                              Plaintiff,<br><br>      vs.<br><br>TYLER LYNCH BROWN; ALISHA COPPEDGE, individually and the marital community comprised thereof,<br><br>                              Defendants. | NO.  2:23-cv-01652-MJP<br><br>**PLAINTIFF UTICA LEASECO, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: AUGUST 2, 2024 |

## I.      INTRODUCTION AND RELIEF REQUESTED

This Court ordered Defendant Mr. Brown personally liable to Plaintiff Utica Leaseco, LLC ("Utica") for breach of two personal guarantees that he executed.  *See* ECF No. 23, June 4, 2024 Order ("12(c) Order"), at 3:7-15.  Utica now seeks an order of liability against the marital community of Defendants Mr. Brown and Ms. Coppedge ("Defendants").

Further, in executing the two personal guarantees, Mr. Brown waived any defenses, including the affirmative defense of failure to mitigate.  Absent that defense, Defendant Brown owes Utica $458,095.19 plus post-default interest, and costs and attorneys' fees.  The Court

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -1
2:23-cv-01652-MJP

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

should enter an order granting this Motion for that amount against Defendant Brown and the Brown-Coppedge marital community.

## II.     STATEMENT OF FACTS

### A.     Mr. Brown Waived the Defense of Failure to Mitigate

This Court has already found that the Master Lease Agreement ("Master Lease"), Equipment Schedule 2, and Mr. Brown's Guaranty and Guaranty Reaffirmation are valid and enforceable contracts.  *See* 12(c) Order, at 3:7-15.  This Court also found that Mr. Brown defaulted on the Guaranty and Guaranty Reaffirmation, ordering Mr. Brown personally liable to Utica for that default.  *See id*.

Under the Master Lease and Equipment Schedule 2, Terra Northwest, LLC ("Terra")[1] agreed to lease equipment from Utica in exchange for Terra paying monthly rent to Utica under respective Equipment Schedules.  *See* Declaration of Renate LaCroix[2], **Exhibit A**, Master Lease documents; **Exhibit B**, Equipment Schedule 2 documents.  If Terra defaulted on the Master Lease documents, Utica could seize and sell the collateral equipment.  *See* Ex. A, at 11 § 16.

Terra first defaulted in February 2023 when its monthly rent under the Master Lease and Equipment Schedule 2 was returned for insufficient funds and Terra failed to correct the default. Terra defaulted again in March 2023 by failing to pay any rent due under the Master Lease and Equipment Schedule 2.  *See* **Exhibit C**, April 21, 2023 Default Letter, at 1.

On April 21, 2023, Utica sent Terra and Mr. Brown a default letter ("Default Letter"), which notified Mr. Brown that due to Terra's failure to pay the monthly rent in February and March 2023 Terra was in default of the Master Lease and Equipment Schedule 2, and that Mr. Brown was in default of the Guaranty and Guaranty Reaffirmation.  *See* Ex. C, at 1.  The Default Letter demanded payment of all Money Owed Utica under the Master Lease, Equipment

---

[1]    Mr. Brown is President of non-party Terra.  *See* ECF No. 11, Answer, ¶ 4.
[2]    Unless otherwise noted, all Exhibits are attached to the LaCroix Declaration.

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -2
2:23-cv-01652-MJP

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

Schedule 2, the Guaranty, and the Guaranty Reaffirmation.  *See* Ex. C, at 1-2.  Defendants admit that neither Terra nor Mr. Brown paid any money to Utica after the Default Letter.  *See* Answer, ¶¶ 37-38.

On June 20, 2023, at the expense of $3,000, Utica sold the equipment covered by the Master Lease and Equipment Schedule 2 for $1,300,000.00.  *See* **Exhibit D**, at 1 ($1.3M Bill of Sale for collateral equipment); **Exhibit E**, at 1 (Invoice to Utica for $3,000 to sell equipment).

In executing the Guaranty, Mr. Brown expressly waived the ability to raise defenses if Utica sold the collateral equipment.  The Guaranty's Section 3 provides, in relevant part, that:

> Lessor [Utica] may, at Lessor's election, foreclose on any security held by Lessor, and sell, lease, transfer or otherwise deal with such Equipment, by one or more judicial or nonjudicial sales, without affecting or impairing in any way the liability of Guarantor [Brown].  Guarantor waives any defense arising out of any such election by Lessor, even though such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Lessor against Lessee [Terra] or any security. . . . **For example, if Lessor elects to take back and sell the Equipment through a nonjudicial sale, Guarantor gives up any potential defenses by agreeing to the foregoing waivers**.

Ex. A, at 21-22 § 3 (emphasis added).  Accordingly, Defendant Brown has waived the defense of failure to mitigate damages.

### B.     Utica's Damages are Certain and Uncontested

After Utica's $1.3 million sale of the collateral equipment, Mr. Brown owes Utica $458,095.19 ("Money Owed Utica") plus post-default interest, and costs and attorneys' fees.  The basis for the Money Owed Utica is:

Under the Master Lease, Terra's monthly rent began at $19,250.00 per month, but in accordance with the Master Lease, in July 2022, Terra's monthly rent increased to $20,212.50, and again in January 2023, Terra's monthly rent increased to $22,330.00.  *See* ECF No. 11, Answer, ¶ 9; Ex. A, at 3 § 2, 26-27.  Defendants have admitted these facts.  *See* Answer, ¶ 9.  In

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -3
2:23-cv-01652-MJP

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

the Master Lease, its Rider 2, and Rider 1 to the Master Lease Equipment Schedule, Terra agreed to administrative and late fees:  a 10% fee for missed or late monthly rent payments; a 5% fee applied to payments returned for insufficient funds; an annual $5,000.00 administrative fee; and a buyout price of $104,049.45 at the end of the lease term.  *See* Ex. A, at 3 § 2, 19, 28 §10, 33.

Like in the Master Lease, under Schedule 2, Utica had the ability to adjust Terra's monthly rent, which it did in January 2023, increasing Terra's monthly rent from $11,270.00 to $13,079.00.  *See* Ex. B, at 5 § 14.  Defendants admit these facts.  *See* Answer, ¶ 27.  Under Equipment Schedule 2 and its Rider 1, Terra also agreed to pay a 10% fee for late or missed monthly rent, 5% fee for payments returned for insufficient funds, and a buyout price of $58,687.19 at the end of the lease term.  *See* Ex. B, at 9; Ex. A, at 3 § 2.

In the event of a default, the Master Lease's Section 16 required Terra to pay Utica all unpaid monthly rent, reasonable legal fees, and enforcement costs and expenses.  It also required Terra to pay interest to Utica on all amounts due from the date of Terra's default until all amounts due are paid.  *See* Ex. A, at 11-12 § 16.  If Mr. Brown defaulted on the Guaranty, Utica could declare the Master Lease and Equipment Schedule 2 in default, and sue to recover damages and specific performance of the Guaranty, including collection of all Money Owed Utica, post-default interest, and costs and reasonable attorneys' fees to enforce the Master Lease and Guaranty.  *See* Ex. A, at 23 § 6.

When Utica sold the collateral equipment for $1.3 million, the total Money Owed Utica by Mr. Brown was $1,758,095.19.  *See* **Exhibit F**, Money Owed Utica Worksheet.  Subtracting $1.3 million from $1,758,095.19 results in $458,095.19 for which Mr. Brown is liable to Utica plus post-default interest, costs, and reasonable attorney's fees.  *See* Ex. F.

### III.    ISSUES PRESENTED

1.    Should this Court order the Brown-Coppedge marital community liable to Utica for breach of contract?

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -4
2:23-cv-01652-MJP

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

2.      Should this Court enter an order in favor of Plaintiff for the sum-certain amount of $458,095.19 plus post-default interest, and enforcement costs and attorneys' fees?

## IV.      EVIDENCE RELIED UPON

Plaintiff Utica's Motion relies upon the pleadings on record with this Court, the Declaration of Renate LeCroix and its Exhibits, and the authorities cited in this Motion.

## V.      ARGUMENT

### A.      Summary Judgment Legal Standard

When "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55 (1986). Here, no material issue of fact remains – the Brown-Coppedge martial community's liability and Mr. Brown's wavier of his affirmative defense of failure to mitigate are both issues of law. And Utica's damages are a sum-certain computation based on the plain language of the lease documents and exhibits, and Defendants' admissions.

### B.      The Brown-Coppedge Martial Community is Liable to Utica

Defendants Mr. Brown and Ms. Coppedge are married. *See* ECF No.18, Defendants Opposition to Plaintiff's Rule 12(c) Motion ("Opposition"), at 4:3. Under Washington law, Mr. Brown's personal liability to Utica is imputed to his marital community. "[T]here is a presumption that a guaranty given by one spouse, for the benefit of a family owned corporation, binds the community." *Key v. Cascade Packing Co., Inc.*, 19 Wn. App. 579, 583, 576 P.2d 929 (1978); *see also* Harry M. Cross, *The Community Property Law (Revised 1985)*, 61 Wash. L. Rev. 13, 120 (1986) ("If some community property benefit, direct or indirect, can be found, the presumption of community liability will not be overcome. For example, a purpose to benefit the corporation which employs the husband or of which he is an officer or director will supply

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -5
2:23-cv-01652-MJP

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

1
2
3
4
5
6
7

sufficient indirect benefit, even though the corporation is insolvent."). Here, Defendant Brown was President of Terra[3] when he signed the Master Lease, Equipment Schedule 2, the Guaranty, and the Guaranty Reaffirmation. *See* Opposition, at 2:13-20. The Court's 12(c) Order that Mr. Brown is personally liable to Utica for his default on the two Guarantys, and Terra's default on the Master Lease and Equipment Schedule 2, imputes that liability to the Brown-Coppedge marital community. Accordingly, the Court should enter an order of adverse liability against the Brown-Coppedge marital community.

8

### C.     Mr. Brown Waived the Failure to Mitigate Affirmative Defense

9
10

Defendant Brown cannot raise the affirmative defense of failure to mitigate damages because he waived it in the Guaranty. The Guaranty's Section 3 provides, in relevant part, that:

11
12
13
14
15
16

> Lessor [Utica] may, at Lessor's election, foreclose on any security held by Lessor, and sell, lease, transfer or otherwise deal with such Equipment, by one of more judicial or nonjudicial sales, without affecting or impairing in any way the liability of Guarantor [Brown]. Guarantor waives any defense arising out of any such election by Lessor, even though such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Lessor against Lessee [Terra] or any security. . . . **For example, if Lessor elects to take back and sell the Equipment through a nonjudicial sale, Guarantor gives up any potential defenses by agreeing to the foregoing waivers**.

17

Ex. A, at 21-22 § 3 (emphasis added).

18
19
20
21

"[A]n express waiver is governed by its own terms." *Matter of Estate of Petelle*, 462 P.3d 848, 850, 195 Wn.2d 661, 665 (2020) (en banc). "The doctrine of waiver ordinarily applies to all rights or privileges, and the party alleged to have waived a right must generally have actual or constructive knowledge of the existence of the right." *Id.*

22
23

*First National Park Bank v. Johnson* is instructive as it presents a similar situation to this case – a creditor suing a guarantor for the deficiency between a loan and the proceeds from the

24
25

---

[3]     Ms. Coppedge is Terra's registered agent. *See* Answer, ¶ 4.

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -6
2:23-cv-01652-MJP

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

sold collateral.  553 F.2d 599, 600 (9th Cir. 1977).  In *First National*, the guarantor appealed the trial court's summary judgment in favor of the creditor and asked the Ninth Circuit to address if the guarantor had waived defenses by signing the guaranty agreement.  *Id*. at 601.  The Ninth Circuit affirmed summary judgment for the bank-creditor, holding that by signing the valid, enforceable guaranty that contained an express waiver of defenses to the creditor's sale of the collateral, the guarantor had, indeed, waived all such defenses.  *Id*. at 601.

This Court has already found that the Guaranty is a valid binding contract.  *See* 12(c) Order, at 3:10-11.  Like the guarantor did in *First National*, so too here, did Mr. Brown sign the guaranty that contained an express waiver of all defenses, including failure to mitigate, should Utica sell the collateral equipment.  Thus, as a matter of law, Defendant Brown has expressly waived the defense of failure to mitigate damages and cannot raise it in this litigation.

### D.     The Total Money Owed Utica is $458,095.19 Plus Interest, Costs, and Fees

Having waived the one affirmative defense pled, there is nothing barring the Court from entering a sum-certain damages amount in favor of Utica.  The Master Lease, Equipment Schedule 2, Mr. Brown's Guaranty and his Guaranty Reaffirmation, Defendants' Answer, and the Exhibits attached to this Motion accurately recount the categories and amounts of the Money Owed Utica:

- The remaining rental payments owed by Terra on the Master Lease from February 2023 through August 2026 equal $960,190.00.  *See* Ex. F; Ex. A, at 3 §2, 26-27; Answer, ¶ 9.

- The remaining rental payments owed by Terra on Equipment Schedule 2 from February 2023 through October 2026 equal $588,555.00.  *See* Ex. F; Ex. B, at 2-3 § 3, 5 § 14; Answer, ¶ 27.

- Terra agreed to pay the buyout price of $104,049.45 at the Master Lease's end, and the buyout price of $58,687.19 at the end of Equipment Schedule 2.  *See* Ex. F; Ex. A, at 28 §10, 33; Ex. B, at 9; Answer, ¶ 29.

- Until Utica sold the leased equipment, Terra incurred $18,971.30 in fees for missed rental payments (10% fee) and the return of February 2023's payment for

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -7
2:23-cv-01652-MJP

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

insufficient funds (5% fee). *See* Ex. F; Ex. A, at 3 §2; Ex. B, at 5 § 14.

- The Master Lease required Terra to pay Utica a $5,000 annual Lease Administration Fee for 2023. *See* Ex. F; Ex. A, at 19.

- The Master Lease required Terra to pay Utica's enforcement costs, which includes reasonable attorney's fees incurred in this lawsuit, administrative costs, and costs to Utica if it sold the underlying equipment. Prior to filing the Complaint, Utica spent $3,000 in selling the equipment, and $10,000 in legal and administrative costs. *See* Ex. F; Ex. A, at 11-12 § 16(c)(2), Ex. D at 1; Ex. E, at 1.

- In the event of a default, Utica is entitled to post-default interest on the total Money Owed Utica. *See* Ex. A, at 11-12 § 16(c)(2).

In total, the Money Owed Utica is $1,758,095.19 less the $1.3 million from sale of the collateral equipment, which is $458,095.19. *See* Ex. F. The Court should enter an order that Mr. Brown and the Brown-Coppedge marital community are liable to Utica for $458,095.19, plus post-default interest, and enforcement costs and reasonable attorneys' fees incurred in this lawsuit.

## VI.   CONCLUSION

For the foregoing reasons Plaintiff Utica respectfully requests that this Court GRANT Utica's Motion for Partial Summary Judgment.

Dated: July 5, 2024

GORDON REES SCULLY MANSUKHANI, LLP

By:   *s/ Mark B. Tuvim*
Mark B. Tuvim, WSBA No. 31909

By:   *s/ Patrick Jordan*
Patrick Jordan, WSBA No. 40292

Attorneys for Plaintiff Utica Leaseco, LLC
Gordon Rees Scully Mansukhani, LLP
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Phone: (206) 695-5144
Fax: (206) 689-2822

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -8
2:23-cv-01652-MJP

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the parties.

DATED this 5th day of July 2024.

*s/ Leslie Boulanger*
Leslie Boulanger

PLAINTIFF UTICA LEASECO, LLC'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT -9
2:23-cv-01652-MJP

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5144
Facsimile: (206) 689-2822